TRIUMPH, The (HILL v.).    See Case No. 6,-500.

TROAX (UNITED STATES v.).    See Case No. 16,540.

TROBE (UNITED STATES v.).    See Case No. 16,541.

## Case No. 14,184.

### The TROJAN.

[8 Ben. 498.] [1]

District Court, E. D New York.    July, 1876.

TOWAGE—DAMAGES—SPEED.

Where a lighter loaded was towed by a tug from the North into the East river without slack-

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

ing speed upon coming round against the ebb tide, and capsized and sunk, *held*, that the tug was in fault for not observing the effect of her speed upon coming up against the tide, and slacking when necessary to save the lighter.

The lighter Alert, with a full cargo of salt in bags, was towed by the tug Trojan from Jersey City, on the North river, to go to a pier on the East river. The tide in the East river was strong ebb, and very soon after rounding the Battery the lighter began to sheer and be unmanageable; and the tug not slacking speed, in a few minutes she rolled off her deck-load abreast of pier 6, in the East river, and capsized and sank. The owner of the lighter sued to recover the damage to the lighter.

Beebe, Wilcox & Hobbs, for libellant.

R. D. Benedict and W. W. Goodrich, for claimant.

BENEDICT, District Judge. This action is brought to recover the damages caused by the sinking of the lighter Alert while in tow of the steamtug Trojan, on the 17th day of April, 1874. The lighter, fully loaded with salt, was taken in tow at the White Star dock in Jersey City, to be towed to the pier at the foot of Thirteenth street, East river. The accident happened after the lighter had passed into the East river and was being towed against the tide.

A mass of evidence has been taken on both sides; but, upon a careful consideration of it, the case is narrowed to the question whether the speed at which the lighter was being towed when she sank, was the cause of the collision. I find the fact to be, that the lighter was properly loaded and that with proper care on the part of the tug and proper steering on her part she could have been transported in safety. The proofs fail to establish that the sinking was the result of any want of care in the steering of the lighter; and the weight of evidence affirmatively proves to my satisfaction negligence on the part of the tug in towing at the speed she did. It was the duty of the tug to watch the effect produced on the lighter by the rate of speed when she began to meet the ebb tide; and I doubt not, had this been done, the speed would have been slacked and the disaster avoided.

The theory has been put forth in behalf of the tug, that the sheering of the lighter was caused by her taking in water through some leak, and so becoming water-logged; but, while such a circumstance, if it existed, would doubtless account for the action of the lighter, the difficulty is that the theory lacks the support of proof. I find no evidence in the cause sufficient to justify finding that the lighter took in water through a leak and so became full of water and unmanageable. The evidence tends to show the contrary. There is conflicting evidence in the case and some vigorous swearing, but when the whole mass of testimony is considered the weight of it is in support of the allegation of the libel, that the lighter was towed at a higher rate of speed than was necessary or consistent with her safety.

There must, therefore, be a decree for the libellant, with an order of reference.